UNITED STATES of America ex rel. H. Rap BROWN, Relator, Appellant,

v.

Honorable Raymond FOGEL, City Sergeant, Alexandria, Virginia, Respondent, Appellee (two cases).

Nos. 12295, 12316.

United States Court of Appeals
Fourth Circuit.

Argued April 11, 1968.

Decided April 11, 1968.

Opinion Filed April 19, 1968.

William M. Kunstler, New York City (Murphy Bell, Baton Rouge, La., Arthur Kinoy, New York City, Morton Stavis, Newark, N. J., Howard Moore, Jr., Atlanta, Ga., Philip J. Hirschkop, Dennis Roberts, Harriet Van Tassel and George Logan, III, Newark, N. J., on memorandum), for appellant.

Reno S. Harp, III, Asst. Atty. Gen. (Robert Y. Button, Atty. Gen. of Virginia, and Earl F. Wagner, Commonwealth's Atty. for City of Alexandria, on the brief), for appellee.

Before HAYNSWORTH, Chief Judge, and BRYAN and WINTER, Circuit Judges.

WINTER, Circuit Judge:

Immediately following the argument and conference, we announced our judgment in these consolidated appeals. We now proceed to state the reasons for our conclusions.

The background of the present appeals was considered by us in Brown v. Fogel, 387 F.2d 692 (4 Cir. 1967), and it is unnecessary for us to repeat the facts recited there. In No. 12,295 we are asked to review orders of the district judge, entered February 26, 1968, (a) forfeiting and revoking the personal appearance bond which, by order entered September 18, 1967, the relator was permitted to post to secure his release, subject to the conditions recited in the September 18, 1967, order, namely, that relator be released in the general custody of his attorney and remain within the geographical limits of the Southern District of New York, except for court appearances or for travel in the preparation of his defense to criminal charges pending against him, and (b) directing the relator's return to the Eastern District of Virginia, as soon as he was released on bail or otherwise by the United States District Court for the Eastern District of Louisiana, for transfer to the Commonwealth of Virginia, to be held without bail pending the disposition of his various appeals and other applications in opposition to his extradition to the State of Maryland for trial on the criminal charges pending against him there.[1] In No. 12,316 we are asked to review the district judge's refusal, on April 8, 1968, to admit relator to bail, after revocation of the previous bail order, and his denial of relator's application for a writ of habeas corpus without plenary hearing on April 9, 1968.

---

1. In this appeal, prior to argument, we entered an order, inter alia, denying summary reversal and denying bail pending determination of the appeal.

No. 12,295

The bail order of September 18, 1967, was revoked and the personal appearance bond forfeited for relator's violation of the conditions of his release. After full hearing, conducted following due notice to relator and his counsel, at which relator and his counsel were present and given every opportunity to adduce evidence and to participate therein, the district judge found that, on February 17, 1968, relator was in Oakland, California, and, on February 18, 1968, relator was in Los Angeles, California, that neither place was in the Southern District of New York, that relator's counsel in whose custody relator was placed did not reside in either place, that it was not necessary for relator to go to either place for the purposes of trial or legal hearings or in preparation for defense of any charge asserted against him, and that relator did not so travel from the Southern District of New York for any such purposes or purported purposes.

Our examination of the record of the evidence adduced at the hearing satisfies us that the findings of the district judge were amply supported and, hence, were not clearly erroneous.

■■■ Relator, nevertheless, argues that revocation of bail and forfeiture of the bond were legally impermissible because not authorized by the Bail Reform Act of 1966, 18 U.S.C.A. §§ 3146 et seq. The short answer is that the Bail Reform Act, *by its terms,* is inapplicable to relator. By 18 U.S.C.A. § 3152(2), the Act applies to persons charged with an offense, which is defined to mean "any criminal offense, other than an offense triable by court-martial, military commission, provost court, or other military tribunal, *which is in violation of an Act of Congress and is triable in any court established by Act of Congress.*" (emphasis supplied). Relator is charged with an offense under the laws of the State of Maryland, and is in custody under a warrant of extradition; he is not within the terms of the Act. That the Act does not extend beyond federal prisoners charged with federal non-military crimes has been recognized in Ballou v. Commonwealth of Massachusetts, 382 F.2d 292 (1 Cir. 1967).

■■■ Similar to the argument advanced in the *Ballou* case, relator argues that even if inapplicable, the "spirit" of the Act should be used as a guide in determining whether the district judge abused his discretion in revoking bail, which he granted under his inherent power to admit to bail, for violation of the conditions of release. In our view, this argument provides no basis for reversal of the district judge's order. It is true that the Act provides *specific* penalties only for a wilful failure to appear, 18 U.S.C.A. § 3150; and these are forfeiture of security and criminal penalties. But, 18 U.S.C.A. § 3151 expressly preserves, unaffected by the Act, the power of any court of the United States to punish for contempt. Violation of a condition of release constitutes contempt, and for contempt the Eighth and Fourteenth Amendments are the only limitation on the punishment which may be imposed, short of the Court's sound discretion. Surely, the Act's silence of a specific remedy to assure appearance after demonstrated breach of a condition of admission to bail under the Act indicates the extent of the Court's power under § 3151. The "spirit" of the Act is thus not to limit or to prescribe exclusive remedies for breach of a condition of release, other than appearance in appropriate cases. For breach of condition other than appearance, the Court when proceeding under the Act or under the inherent power may do all that is appropriate to the orderly progress of the trial and the fair administration of justice. Cf. Fernandez v. United States, 81 S.Ct. 642, 5 L.Ed.2d 683 (1961) (per Harlan, J., as Circuit Justice).

■■■ Under the circumstances of the instant case and having due regard for the delicate matter of comity which is presented when a federal court undertakes to admit to bail one charged under state process, we think there was no

abuse of discretion on the part of the district judge in revocation of bail. For the same reasons the district judge did not improperly deny bail pending the outcome of this appeal, and we declined bail pending our decision and decline bail pending the outcome of any attempt at further review.[2]

■ In revocation of bail by the district judge and in our refusal to grant bail, we perceive no violation of relator's First and Fourteenth Amendment rights. The contention is premised on the fact that relator's February 17 and 18 appearances in California were at public gatherings where he spoke publicly to large groups. The circumstances of the violation of the conditions of his release may have been such as to make their existence open, notorious and incontrovertible, but relator's bail was not revoked because he spoke, but because he left the Southern District of New York for other than an authorized purpose. In relator's first appeal we found no denial of his First Amendment rights; in this appeal, similarly, we conclude, his rights have not been impaired.

■ In ordering forfeiture of relator's personal recognizance, the district judge ordered forfeiture of its principal sum—$10,000. In so doing, the district judge made reference to the fact that relator "is indebted unto the United States of America in the sum of $10,000." It is argued to us that the district judge believed that relator's bond constituted a contract between him and the United States providing liquidated damages for its breach in the penal amount of $10,000 and that the district judge considered himself without authority to forfeit any lesser sum.

If there was such a belief on the part of the district judge, he was in error. At the time of declaration of forfeiture, perhaps, the district judge had no evidentiary basis on which to declare a forfeiture of any lesser sum. But, as the district judge had authority to declare a forfeiture, so also he has authority, on a proper showing and within his informed discretion, to remit a forfeiture in whole or in part. We do not decide, or even indicate to the district judge, in the instant case, that any remission of forfeiture is proper or should be granted. In affirming his order, we provided only that affirmance should be without prejudice to any motion for remission which relator may hereafter be advised to file. Specifically, however, such a motion, if filed, may be litigated separately from the other questions presented to us in these consolidated appeals; and, in our view, may not serve as the basis for a stay of any other portion of the district judge's orders.[3]

### No. 12,316

What we have said in No. 12,295 with reference to the district judge's and our denial of bail, after revocation of the previous order admitting to bail, is dispositive of the same questions in this appeal. We turn, therefore, to the summary denial of a writ of habeas corpus.

Relator sought habeas corpus from Courts of the Commonwealth of Virginia. He was granted a plenary hearing at which he presented evidence on some points in issue. He was permitted to proffer, but not to prove, his evidence relating to the dangers to which he would be exposed if he were returned to

2. After argument but before the filing of this opinion relator requested immediate issuance of our mandate in No. 12,316, so that he may be transferred from Federal to Virginia authorities who will, in turn, deliver him to Maryland authorities. In his motion relator has alleged that he will not seek review by the Supreme Court of the United States. We view such re-

quest as rendering moot any further litigation and any further review concerning any of the issues in Nos. 12,295 and 12,316, except the forfeiture, and possible remission, of all or part of the forfeiture of relator's personal recognizance in No. 12,295.

3. See statement in footnote 2, supra.

Maryland. When denied habeas corpus relief by the state trial court and review by the Virginia Supreme Court of Appeals, relator pressed a previously filed application in the district court, since his state remedies had clearly been exhausted. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Hunt v. Warden, 335 F.2d 936 (4 Cir. 1964); 28 U.S.C.A. § 2254(b). This the district judge denied without plenary hearing, but after consideration of the state court record.

It is first necessary to delimit the basis for the requested relief. In the state court, in the district court, and before us, relator did not and does not contest (a) his identity, (b) that he is the person charged in the Maryland warrant for extradition or (c) that he was in Maryland at the time that the alleged crime with which he is charged was committed. Additionally, relator makes no contention concerning the sufficiency of the warrant or the indictment. In the district court, relator attacked the legality of his extradition on the dual grounds that he would be denied due process of law in a trial in Maryland and that his life and limb would be endangered if he were returned to Maryland. In argument before us, the basis for the writ was further limited because relator, by his counsel, substantially abandoned his due process argument. In effect, he conceded what is manifest, namely, that if he were convicted in Maryland, by proceedings which denied him due process of law, he could obtain redress of his rights from the Maryland Special Court of Appeals, or the Maryland Court of Appeals, or the Supreme Court of the United States, failing which he could attack his conviction collaterally in the United States District Court for the District of Maryland, with a right of appeal to us and a discretionary right of further review to the Supreme Court of the United States. Cf. Sweeney v. Woodall, 344 U.S. 86, 73 S.Ct. 139, 97 L.Ed. 114 (1952).

Were relator proceeding *pro se* and were he making a general allegation that he would be subjected to hazard to life and limb if he were returned to Maryland, we would be met by difficult questions. We would be required to determine the scope to give to his allegation, recognizing the liberality with which pleadings *pro se* must be construed, and we would be required to unravel the knotty problem of the extent to which, if at all, a federal court may nullify extradition after inquiry into a claim of prospective denial of constitutional rights posed by such decisions as Marbles v. Creecy, 215 U.S. 63, 30 S.Ct. 32, 54 L. Ed. 92 (1909); Commonwealth ex rel. Mattox v. Superintendent of County Prison, 152 Pa.Super. 167, 31 A.2d 576 (1943); Commonwealth ex rel. Brown v. Baldi, 378 Pa. 504, 106 A.2d 777 (1954), cert. den., 348 U.S. 939, 75 S.Ct. 360, 99 L.Ed. 735 (1955); Johnson v. Dye, 175 F.2d 250 (3 Cir.), rev'd., 338 U.S. 864, 70 S.Ct. 146, 94 L.Ed. 530 (1949); Johnson v. Matthews, 86 U.S.App.D.C. 376, 182 F.2d 677 (1950), cert. den., 340 U.S. 828, 71 S.Ct. 65, 95 L.Ed. 608 (1950); Davis v. O'Connell, 185 F.2d 513 (8 Cir. 1950); and Sweeney v. Woodall, supra. See Note, Extradition Habeas Corpus, 74 Yale L.J. 78 (1964). But such is not this case.

Relator is represented by outstandingly competent counsel and both in the plenary hearing in the state court and in argument before us, counsel proffered the proof on which they relied to sustain the allegation. Because of the participation of such counsel, we may safely assume that all was proffered that could be proffered. Briefly stated, the proffers were that the State's Attorney of Dorchester County, Maryland, the county in whose Circuit Court relator was indicted, wore a pistol in court, that Negroes were denied fundamental rights in the City of Cambridge and in Dorchester County, Maryland, that relator was struck on the forehead by a pellet from a shotgun fired at the outbreak of civil disorder in Cambridge, Maryland, which he was charged with fomenting, that General Gelston, the Commanding General of the Maryland National Guard,

exonerated relator from fomenting civil disorder in Cambridge, Maryland, that civil unrest in Cambridge, Maryland was precipitated by the act of a deputy sheriff after relator had delivered a fiery speech and that relator had been advised that he could not be represented by an out-of-state lawyer at his Maryland trial.

■ Taking as we must, for present purposes, the proffers as proved, we think they fail to sustain the allegation or to establish such an extraordinary state of affairs as would warrant nullification of extradition even under those decisions where courts have asserted such a power to interfere. At the outset, we accept the principle that relator's ultimate guilt or innocence is a matter to be determined at his trial in Maryland and not in the proceedings for extradition or in an attack on the proceedings for extradition. Whether he fomented civil disorder in Cambridge or whether civil disorder was precipitated by an act of a law enforcement officer after relator's "fiery" speech is immaterial in these proceedings except to establish that a melee occurred in Cambridge at the time of relator's appearance there and following relator's delivery of a speech which he, himself, has characterized as "fiery." Although relator was struck by a shotgun pellet, relator made no proffer that he was the intended target of the firing. If it is assumed that the firing was by a law enforcement officer, relator couples the firing with his delivery of a "fiery" speech. We can presume that at a trial in Maryland the making of public speeches is not a usual or necessary part of the proceedings. While extraordinary in itself, the wearing of a pistol in court does not ineluctably establish that the pistol would be discharged in court.

We take cognizance of the provisions of Maryland law which would permit the Circuit Court for Dorchester County, upon application, to remove relator's trial to another area of the state. Maryland Constitution, Art. IV, § 8; 7 Annotated Code of Maryland (1965 Ed.), Art. 75, § 44. And we have no doubt that upon a minimal showing that a fair and impartial trial cannot be held, removal will be freely granted. Not only is removal a provision of Maryland law which would enable relator's trial to be held in an area of the state which does not have the tensions present in Cambridge, Maryland, and thus diminish the possibility of another outbreak of civil disorder with consequent dangers to relator and others, we can presume, also that Maryland will obey the command of Article 25 of its Declaration of Rights and the command of the Eighth Amendment of the Federal Constitution, as made applicable to it by the Fourteenth Amendment, and grant bail which is not excessive. If thus enlarged, relator's exposure to the danger to which he claims he will be subjected will be further diminished.

■ In summary, we find lacking in relator's proffer the existence of the extraordinary situation in which courts, assuming they have the power, have granted habeas corpus to defeat extradition. Because of the insufficiency of the proffer, even when treated as proved, a plenary hearing in the district court was unnecessary. Since there was no other issue, the writ was properly denied.

For these reasons, the orders and judgments in these appeals were

Affirmed.